In re AKIN GUMP STRAUSS HAUER & FELD, LLP; The Robinson Law Firm; Williams, Birnberg & Andersen, L.L.P.; Michael Madigan; Michael J. Mueller; Kenneth M. Robinson; and Gerald M. Birnberg, Relators.

No. 14–07–00402–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 21, 2008.

Rehearing Overruled May 15, 2008.

original arbitration panel after a trial court has confirmed the award and rendered final judgment thereon, we conclude that the trial court did not clearly abuse its discretion by denying the lawyers' motions. Accordingly, we deny the lawyers' petition for a writ of mandamus.

Joy M. Soloway, Julius Glickman, Houston, for appellant.

Grant J. Harvey, Jeffrey C. Kubin, Michael R. Absmeier, Houston, for appellee.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This original proceeding arises out of a long-running fee dispute between a biotechnology company and the lawyers who represented the company in intellectual-property litigation. The trial court below confirmed an arbitration award in favor of the lawyers and rendered a final judgment thereon. More than seven years later, the lawyers asked the trial court for a remand to the original arbitration panel to resolve disputes regarding the meaning of the panel's arbitration award. The trial court denied the motion and also denied a motion to reconsider and to compel arbitration of these disputes before the original panel. Presuming, without deciding, that such disputes can ever be remanded to the

### I. FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1994, relators Akin Gump Strauss Hauer & Feld LLP, The Robinson Law Firm, Williams Birnberg & Andersen, L.L.P., Michael Madigan, Michael J. Mueller, Kenneth M. Robinson, and Gerald M. Birnberg (collectively hereinafter the "Lawyers") represented real party in interest Tanox Biosystems, Inc. as plaintiff in certain litigation based on Tanox's claims against Genentech, Inc. and other companies based on Genentech, Inc.'s alleged violation of a confidentiality agreement and misappropriation of Tanox's trade secrets (hereinafter, "Trade Secret Claims").[1] The Lawyers and Tanox executed a contingency fee agreement (the "Fee Agreement") under which the Lawyers would be compensated only out of any recovery Tanox obtained as a result of the litigation.[2] Tanox agreed to pay the Lawyers a contingent fee calculated on a sliding scale: 25% of the first $32 million recovered on behalf of Tanox, 33 1/3% of the recovery from $32 million to $60 million, 40% of the recovery from $60 million to $200 million, and 25% of the recovery over $200 million. Tanox agreed that, in

1. The intellectual property at issue involved an antibody that Tanox envisioned could be used to treat asthma and allergies. In 1989, Tanox partnered with Genentech, Inc. for development of the antibody, and Genentech executed a confidentiality agreement restricting its use of Tanox's biotechnology. Eventually, Genentech and Tanox elected not to continue their work together, and in 1990, Tanox entered into a development agreement with Ciba–Geigy, Ltd. The litigation Tanox instituted, in federal court, against Genentech arose from Genentech's alleged misappropriation of Tanox's biotechnology in the development of its own allergy drug. In turn, also in federal court, Genentech sued Tanox, and later Ciba–Geigy, for patent infringement. The two suits were consolidated.

2. The Fee Agreement pertained only to the Lawyers' representation of Tanox as plaintiff in the trade-secret action. For the Lawyers' defense of Tanox on the patent infringement claim, Tanox paid the Lawyers an hourly fee.

the event the case was settled (whether before, during, or after trial), the first $8 million of recovery would be paid to the Lawyers, "regardless of whether the total recovery amounts to or is less than $32 million."

Under the Fee Agreement, the amount recovered on behalf of Tanox that was subject to the above percentages, included, but was not limited to the following:

(i) all cash, monies, or substantial equivalent recovered by Tanox as a result of the litigation, plus (ii) the economic value to Tanox of all tangible property (real, personal, or mixed) obtained for Tanox as a result of the litigation . . . plus (iii) all future payments (such as, by way of example, licensing fees, royalties, and similar future payments) Tanox becomes entitled to receive as a result of the litigation; provided, however, that with respect to royalties or similar future payments received from defendants, Tanox will pay the [Lawyers] 10% of any such amounts, to be paid . . . until such time as the "contingent fee" has been paid in full or the "limitations on contingent fee" [no more "contingent fee" as to royalties after aggregate "contingent fee" for all categories reaches $300 million and total contingent fee cannot exceed $500 million in the aggregate] have been reached.

The Fee Agreement also reflected the parties' recognition that the Trade Secret Claims might be resolved by a "new business arrangement" between Tanox and one or more of the companies against which Tanox had asserted the Trade Secret Claims. Tanox agreed that, in the event of settlement in the form of a new business arrangement, the Lawyers also would receive the percentage contingent fees based on "[a]ny cash, money, or substantial equivalent, any tangible property, and any future payments (such as licensing fees, royalties, income from third parties with respect to defendants' intellectual property, and similar future payments) received by Tanox as a result of the litigation, on account of such new business arrangement. . . ."

In 1996, Tanox and Genentech, Inc. (hereinafter "Genentech") agreed to settle the litigation. Terms of the settlement included a $16 million cash payment from Genentech to Tanox and a new business arrangement between Tanox, Genentech, and Ciba–Geigy, Ltd. for development of the allergy drug. The parties outlined the new business arrangement in a document entitled "Outline of Terms for Settlement of the Litigations among Genentech, Inc., Genentech International Limited, Tanox Biosystems, Inc. and Ciba–Geigy, Limited, relating to Anti–IgE Inhibiting Monoclonal Antibodies" (hereinafter the "Outline of Terms"). The parties listed in the title of this document signed the document and attached it as an exhibit to the Settlement and Cross–Licensing Agreement. Under the settlement, Genentech and Ciba–Geigy agreed to pay to Tanox royalties and certain payments tied to the achievement of milestones in the forecasted development of the product.

Although the parties provided in the Fee Agreement that Tanox would not "receive any funds relating to this matter without first consulting with and making full disclosure to [the Lawyers]," Tanox did not inform the Lawyers of the $16 million payment from Genentech. The Lawyers learned of the settlement and the payment only after the fact, and immediately made demand on Tanox for $8 million according to the terms of the Fee Agreement. After first hesitating to verify that it had received $16 million from Genentech, Tanox then contested the Lawyers' right to either the $8 million payment or any fees from the new business arrangement.

Ultimately, as called for by the Fee Agreement, Tanox and the Lawyers submitted their fee dispute to arbitration. Tanox claimed that the Fee Agreement was unconscionable and/or unenforceable based on the Lawyers' alleged breach of fiduciary duty, legal malpractice, fraudulent inducement, negligence, and the Lawyers' unjust enrichment, among other theories. The Lawyers claimed that Tanox committed both a breach and an anticipatory breach of the Fee Agreement, by failing to pay the Lawyers the first $8 million received as a result of the litigation and by repudiating Tanox's obligation to pay a percentage contingent fee on the benefits it is receiving from the new business arrangement. In arbitration, the Lawyers sought damages, including the amounts of the percentage fee interests specified in the Fee Agreement on the royalties, milestone payments, licensing fees, and fees on end-user product sales provided for in the settlement between Tanox, Genentech, and Ciba–Geigy. In their live pleading in the arbitration, the Lawyers also requested a declaratory judgment that the Lawyers have a contingent fee interest, as specified in the Fee Agreement, in "all consideration of every kind and description which Tanox has received or will receive pursuant to the settlement agreement (including, without limitation, the $16 million up front cash payment, all milestone payments, and all royalties) including, without limitation, all such consideration that has been paid or will be paid to Tanox under … the Outline of Terms, the Settlement and Cross–Licensing Agreement, the Settlement and Participation Agreement, the Definitive Agreement, and/or *any other agreement related to the anti-IgE program, patents, trade secrets, or other intellectual property.*" [3]

After receiving evidence over the course of thirty-four days, including testimony from eighteen witnesses and approximately four hundred exhibits, and after considering more than one thousand pages of briefing and evidentiary references as well as three days of argument from counsel, a three-member arbitration panel issued its unanimous, sixteen-page, reasoned award (the "Award"). The panel found that the Fee Agreement was the result of a very lengthy negotiation process and was valid and enforceable, despite Tanox's various defenses, including procedural and substantive unconscionability. The panel found that the Settlement and Cross–Licensing Agreement and the Outline of Terms qualify under the Fee Agreement as "a new business arrangement" that came about "as a result of litigation." The panel further found as follows:

> The Lawyers are therefore entitled to receive a percentage contingent fee in any cash, money, or substantial equivalent, any tangible property, and any future payments such as licensing fees, royalties, income from third parties with respect to defendants' intellectual property, and similar payments received by Tanox pursuant to the new business arrangement reflected in the Settlement and Cross–Licensing Agreement and the Outline of Terms.

(This paragraph is collectively referred to in this opinion as the "Page 7 Language").

The panel found that Tanox had breached and anticipatorily breached the Fee Agreement and that the Lawyers were entitled to contract damages and attorney's fees. Additionally, the panel found against Tanox on all of its claims against the Lawyers. In section V. of the Award, entitled "Award as to Lawyers' Claims," the panel stated that Tanox shall pay the

---

**3.** Emphasis added.

Lawyers the following for the Lawyers' claims:

- The unpaid balance due on the initial $8 million portion of the fee,[4] plus prejudgment interest;
- Reasonable attorney's fees and expenses for the Lawyers' prosecution of their fee claim;
- Amounts seeking to apply the sliding-scale, contingent-fee percentages to milestone payments as they may become due in the future under the settlement documents;
- Ten percent of any royalties received by Tanox from Genentech, Genentech International Limited, Ciba–Geigy, Novartis Group, or various other companies on account of the sales of any Anti–IgE Antibody product, including without limitation any royalties paid or received under the Settlement and Cross–Licensing Agreement, the Outline of Terms, the Definitive Agreement to be executed pursuant to the terms of the Outline of Terms, and any modifications, revisions, substitutions, or other changes thereof. The total amount of all these payments based on receipt of royalties shall not exceed $300 million.

(This paragraph is collectively referred to in this opinion as the "Royalty Language").

Finally, the Award provided, "This Award is in full settlement of all claims and counterclaims submitted to this Arbitration as against the named parties. All such claims not expressly granted herein are hereby denied." One of the claims that was not expressly granted in the Award was the Lawyers' request for a declaratory judgment that the Lawyers have a contingent fee interest, as specified in the Fee Agreement, in "all consideration of every kind and description which Tanox has received or will receive pursuant to ... the Definitive Agreement, and/or any other agreement related to the anti-IgE program, patents, trade secrets, or other intellectual property."

In the trial court below, the Lawyers moved for confirmation of the Award, while Tanox filed an application to vacate the Award. No party asked the trial court to modify the Award or to remand to the arbitration panel to clarify the Award before confirmation. The trial court granted the Lawyers' motion to confirm and rendered a final judgment on the Award (the "Judgment"). In the Judgment, the trial court stated that it confirmed the Award "in its entirety," and that a copy of the Award was attached to the Judgment, although no such copy was apparently attached to the Judgment. The trial court rendered a judgment that Tanox take nothing on its claims and that the Lawyers recover all of the items listed by the panel in section V. of the Award. The trial court did not make any declaratory judgment containing the Page 7 Language. The court below rendered the Judgment on

---

**4.** When the Lawyers demanded payment of the $8 million fee, Tanox offered to pay $7 million, less expenses of litigation, if the Lawyers relinquished their claims under the Fee Agreement to any portion of Tanox's royalties. The Lawyers did not accept that offer, choosing instead to file, under seal, a motion to intervene to protect their rights in the still-pending litigation between Tanox and Genentech. Tanox opposed the motion to intervene and, alternatively, moved to compel arbitration of the fee dispute under the arbitration clause in the Fee Agreement. Thereafter, Tanox and the Lawyers entered into an agreement under which the Lawyers agreed to withdraw their motion to intervene, Tanox agreed to pay $6,724,795.15 to the Lawyers, and both parties agreed to submit their dispute over fees to arbitration. In the Award, the arbitration panel granted the Lawyers the difference between what Tanox paid under this agreement and the initial $8 million amount.

March 28, 2000, and this court affirmed that judgment. *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 248 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). The Supreme Court of Texas denied review, and, in 2004, the Judgment became final by appeal. *See id.*

In 2003, the Food and Drug Administration approved the Anti–IgE Antibody, which is being marketed under the name Xolair, for persons with a certain type of asthma. The Outline of Terms reflected the parties' understanding that they would enter into a further and more detailed agreement. Tanox, Genentech, and Novartis executed a document entitled Tripartite Cooperation Agreement dated as of February 25, 2004 (the "Tripartite Agreement"). As of the same date, Tanox and Novartis entered into an Amended and Restated Development and Licensing Agreement ("Amended Development Agreement"). The Lawyers asserted that, under the Award, they are entitled to payments based on three matters relating to these agreements—the Royalty Issue, the Manufacturing Rights Issue, and the Debt Forgiveness Issue, terms defined and discussed below. Tanox disagreed.

In February 2007, the Lawyers filed a "Motion For Remand to the Arbitration Panel." Tanox responded in opposition and also moved to enforce the Judgment. The Lawyers asserted the following in their motion and at oral argument thereon:

- Under the language of the Award, the arbitration panel granted the Lawyers a fee interest in various payments made by third parties to Tanox regarding three different matters. Tanox has refused to pay these amounts to the Lawyers. Therefore, the language of the Award has generated collateral disputes in these regards, and the trial court is required to remand the case to the original arbitration panel to resolve these disputes as to whether the panel awarded these interests to the Lawyers in the Award.

- In its Award, the arbitration panel concluded that the Lawyers should receive their entire contingency fee as set forth in the Fee Agreement.

- Under the Page 7 Language of the Award, the arbitration panel provided that the Lawyers are entitled to a fee on payments that Tanox receives in the new business arrangement involving Genentech and Novartis. The arbitration panel is in the best position to resolve disputes as to the meaning of the language in the Award.

- Under the Royalty Language of the Award, the arbitration panel provided that Tanox must pay the Lawyers ten percent of all royalties that Tanox receives from the sales of Anti–IgE Antibody products. Under the Tripartite Agreement, Novartis must pay Tanox twenty percent of Net Profit from the sales of Anti–IgE Antibody Products in the United States. These payments are allegedly royalties under the Royalty Language so that the Lawyers are entitled to ten percent of these payments. Even though Novartis began making these payments to Tanox in 2005, Tanox refuses to pay the Lawyers any part of these payments, apparently because Tanox claims they are not royalties. Even if these payments are not royalties, they allegedly still would be "future payments" within the scope of the Page 7 Language of the Award, and therefore, Tanox would have to pay the Lawyers forty percent of these payments.[5]

---

5. We refer to this issue as the "Royalty Issue."

- Under the Tripartite Agreement, Tanox receives payment from Genentech and Novartis for every unit of Xolair these companies manufacture. In the third quarter of 2006, Tanox received $2.6 million in such payments. These payments are allegedly "future payments" received under the new business arrangement within the scope of the Page 7 Language. Therefore, Tanox allegedly must pay the Lawyers forty percent of these payments.[6]

- Under the Amended Development Agreement, Novartis forgave a $10 million loan from Novartis to Tanox. This debt forgiveness is allegedly the "substantial equivalent" of a cash payment received by Tanox under the new business arrangement within the scope of the Page 7 Language. Therefore, Tanox allegedly must pay the Lawyers forty percent of this debt forgiveness.[7]

Tanox asserted the following in its response, motion to enforce, and oral argument:

- Under the clear and unambiguous language of the Award, the arbitration panel awarded only the relief specified in sections V. through VIII. of the Award, and the panel did not award any relief to the Lawyers under the Page 7 Language.

- The Lawyers then had the trial court confirm the Award and convert it into a final and enforceable Texas judgment. In the Judgment, the trial court clearly and unambiguously stated the specific relief to which it concluded the Lawyers were entitled, and it unambiguously stated that it denied all relief not specifically granted in the Judgment. The trial court did not specifically grant any relief contained in the Page 7 Language, which is not contained in the Judgment. The Judgment is now final.

- In the arbitration proceeding, the Lawyers asserted they were entitled to a fee interest based on the value of the new business relationship involving Tanox, Genentech, and Novartis. Tanox argued that, if the panel determined that this fee attached to this entire relationship, then the fee would be unreasonable and void.

- The parties arbitrated all aspects of the fee dispute. In the Award, the panel granted the Lawyers certain relief, but the panel did not make the broad declaration that the Lawyers had requested in their live pleading in the arbitration.

- Under Texas law, including section 171.092 of the Texas Civil Practice and Remedies Code,[8] only the trial court can enforce the Judgment, including determining any issues of how to interpret the Judgment that might arise relating to the enforcement of the Judgment. Even if a post-confirmation remand were ever appropriate, it would not be appropriate in this case because the Judgment and the Award are unambiguous.[9]

The trial court denied the Lawyers' motion for remand. The Lawyers filed a motion for reconsideration of the order denying remand and a motion to compel further arbitration. In the reconsideration motion, the Lawyers asserted, among oth-

---

**6.** We refer to this issue as the "Manufacturing Rights Issue."

**7.** We refer to this issue as the "Debt Forgiveness Issue."

**8.** Unless otherwise stated, all references to a "section" are to the Texas Civil Practice and Remedies Code.

**9.** Tanox also asserted arguments on the merits regarding the Royalty Issue, Manufacturing Rights Issue, and Debt Forgiveness Issue.

er things, that (1) to the extent section 171.092 precludes a remand to the arbitration panel following confirmation of the award, this statute conflicts with and is preempted by the Federal Arbitration Act ("Federal Act"), which purportedly allows such remands; (2) when enforcement of an arbitration award is ministerial, then the trial court can enforce the award without guidance from the arbitration panel, but if the arbitration award requires interpretation before it can be enforced, then the issues requiring interpretation must be sent back to the original arbitration panel; and (3) there is no meaningful distinction between section 171.092 and section 13 of the Federal Act. In their motion to compel further arbitration, the Lawyers sought to compel arbitration of the three issues regarding the Award before the original arbitration panel under the Federal Act.[10] The trial court denied both motions, stating in its order, "This Court has the authority to enforce its own final judgment and, in doing so, the authority to decide the issues in dispute." The Lawyers now petition this court for a writ of mandamus compelling the trial court (1) to vacate its orders denying remand to the arbitrators and further arbitration and (2) to sign an order granting remand or compelling further arbitration.

## II. STANDARD OF REVIEW

■ To show themselves entitled to mandamus relief, the Lawyers must show, among other things, that the trial court clearly abused its discretion by denying their "Motion For Remand to the Arbitration Panel" or by denying their "Motion For Reconsideration of Order Denying Motion for Remand and Motion to Compel Further Arbitration." *See In re Prudential Ins. Co. of America*, 148 S.W.3d 124,

135 (Tex.2004). On mandamus review of factual issues, a trial court will be held to have abused its discretion only if the party requesting mandamus relief establishes that the trial court could have reached but one decision (and not the decision it made). *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). Mandamus review of issues of law is less deferential. A trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005).

■ We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex.1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id.*

## III. ISSUES PRESENTED

In their petition, the Lawyers assert the following issues:

(1) Cases under the Federal Act are clear: When an arbitration award requires interpretation before it can be enforced, the proper course is a

---

**10.** The Lawyers also stated that, although the parties agree that a new arbitration panel should not be created, if absolutely necessary and required under the law, the trial court should compel arbitration before a new arbitration panel.

remand for clarification to the original arbitration panel. Did the trial court abuse its discretion in denying the Lawyers' motion for remand to the original arbitration panel to resolve a disagreement between the Lawyers and Tanox over the correct interpretation of the panel's award?

(2) The Fee Agreement contains a broad arbitration clause. That agreement and the law of the case conclusively establish that the parties' present fee disputes are arbitrable. Did the trial court abuse its discretion in refusing to compel arbitration?

(3) Are the Lawyers without an adequate remedy at law?

## IV. ANALYSIS

**A. Does the Federal Arbitration Act apply to the arbitration agreement contained in the parties' contingency fee agreement?**

 The Federal Act applies to an arbitration agreement in any contract involving interstate commerce, to the full extent of the Commerce Clause of the United States Constitution. *See* 9 U.S.C. § 2 (1999); *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277–81, 115 S.Ct. 834, 839–41, 130 L.Ed.2d 753 (1995); *In re L & L Kempwood Assocs.,* 9 S.W.3d 125, 127 (Tex.1999). The Fee Agreement is a contract involving interstate commerce, and therefore, the Federal Act applies to the arbitration agreement between the Lawyers and Tanox. Nonetheless, by enacting the Federal Act, Congress did not occupy the entire field of arbitration regulation, and the Federal Act pre-empts state arbitration law only to the extent that the state law actually conflicts with the Federal Act. *See Volt Info. Scis., Inc.*

*v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989); *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 779–80 (Tex.2006). Therefore, the Texas Arbitration Act ("Texas Act") applies to the parties' arbitration agreement as well, except to the extent that it actually conflicts with the Federal Act.

**B. Are there potential problems if a trial court can remand issues to the arbitration panel after the court has confirmed the arbitration award and rendered final judgment thereon?**

The Federal Act contains no provision that allows a trial court to remand a case to the arbitration panel after the panel issues an award. The Texas Act provides that an arbitration panel may clarify its prior award. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.054(a)(2) (Vernon 2005); *Daniewicz v. Thermo Instrument Sys., Inc.,* 992 S.W.2d 713, 716–17 (Tex.App.-Austin 1999, pet. denied) (affirming trial court's enforcement of arbitration panel's pre-confirmation clarification order under section 171.054). This clarification may be made only (1) on application of a party to the arbitration panel within twenty days of the day on which the party receives the arbitration award or (2) by submission of the clarification issues to the panel by a trial court before which is pending a motion to confirm, vacate, modify, or correct an award under sections 171.087, 171.088, 171.089, or 171.091.[11] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.054, 171.087, 171.088, 171.089, 171.091 (Vernon 2005).

When a trial court renders judgment on an arbitration award, the Federal Act pro-

---

11. While a motion is pending under sections 171.087, 171.088, 171.089, or 171.091, presumably parties are free to request the trial court to submit to the arbitration panel issues that need clarification.

vides that the court's judgment "shall have the same force and effect, *in all respects,* as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13 (1999) (emphasis added). The Texas Act contains a substantially similar provision.[12] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.092 (Vernon 2005). Therefore, while a pre-confirmation remand to the arbitration panel can help to clarify various issues regarding the arbitration award, post-confirmation remands appear to violate the legislative mandate that judgments on arbitration awards should have the same effect and be subject to the same law as any other judgment of that court.[13] *See Hamm v. Millennium Income Fund, L.L.C.,* 178 S.W.3d 256, 262–64 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (holding that motion to vacate arbitration award cannot be asserted after trial court has confirmed arbitration award, in part because that would conflict with the requirement of section 13 of the Federal Act and section 171.092 of the Texas Act that judgments on arbitration awards be treated the same as other trial court judgments).

▮ Disputes regarding the interpretation, meaning, and enforcement of a judgment rendered by a Texas trial court are resolved by the presiding judge of the trial court that rendered the judgment. *See* TEX. R. CIV. P. 308; *Wilde v. Murchie,*

949 S.W.2d 331, 332–33 (Tex.1997); *Katz v. Bianchi,* 848 S.W.2d 372, 374 (Tex.App.-Houston [14th Dist.] 1993, no writ). For example, if a trial judge renders a judgment following a lengthy bench trial and if, after that judge retires from judicial service, disputes arise regarding the interpretation, meaning, or enforcement of that judgment, these disputes are resolved by the presiding judge of the trial court that rendered the judgment, even though that judge did not personally render the judgment and even though that judge lacks the personal knowledge of the case possessed by the retired judge who actually adjudicated the dispute. Likewise, if a trial court renders a declaratory judgment based on a jury's findings as to the mutual intent of the parties to an ambiguous contract, subsequent disputes regarding the meaning or enforcement of that declaratory judgment are not sent to back to the original jury for determination. If a trial court were to remand to the original arbitration panel disputes regarding the meaning and enforcement of the trial court's judgment on an arbitration award, then that judgment would not be subject to the same law and given the same effect as other judgments rendered by that court, contrary to the express requirements of both the Federal Act and the Texas Act. *See* 9 U.S.C. § 13; TEX. CIV. PRAC. & REM. CODE ANN. § 171.092. No case binding on this court allows a post-confirmation remand in a case governed by the Federal Act or the Texas Act, and it is not

---

**12.** The Lawyers correctly have asserted that these two provisions-section 13 of the Federal Act and section 171.092 of the Texas Act-are "nearly identical" and that there is "no meaningful distinction" between these two sections. Tanox agrees with this assessment.

**13.** A clarification by the arbitration panel before confirmation can assist the parties in understanding the award so as to see if there are any grounds upon which they may seek to

vacate or modify the award, and it can help the parties and the trial court in formulating an unambiguous judgment for the trial court to render based on the award. A clarification at this juncture also serves to take advantage of the panel's familiarity with the issues involved in the recent arbitration, before the passage of time diminishes the panel members' memories regarding the issues (or availability to re-address them), the evidence, and the panel's award.

clear that such a remand would ever be permissible. Nonetheless, we presume without deciding, that such a remand is possible.

### C. Did the trial court clearly abuse its discretion by denying the Lawyers' motion to remand when (1) the Award was confirmed by judgment more than seven years earlier and (2) the Lawyers have not asserted that the Award is ambiguous or incomplete?

▇ The Lawyers have not alleged that the Award is ambiguous[14] or incomplete.[15] The Lawyers assert that in numerous cases courts have held that post-confirmation remand to the arbitration panel was appropriate and that courts uniformly have held that, in the situation presented in this case, remand to the arbitration panel is required. However, after reviewing the cases cited by the Lawyers and after our own extensive research, we find no cases holding that remand is required in a case under either the Federal Act or a state arbitration act in cases in which there is no assertion that the Award is ambiguous or incomplete. Indeed, we have found only three cases holding that an award should be remanded to the original arbitration panel based on ambiguity or incompleteness, after confirmation in a case under the Federal Act or a state arbitration act.[16] *See U.S. Energy Corp. v. Nukem, Inc.,* 400 F.3d 822, 834–36 (10th Cir.2005) (holding that post-confirmation remand was necessary to clarify ambiguity in language used in arbitration award, even though trial court already had confirmed award under Federal Act); *Tri-State Business Machines, Inc. v. Lanier Worldwide, Inc.,* 221 F.3d 1015, 1020 (7th Cir.2000) (holding trial court erred by not ordering post-confirmation remand to clarify ambiguity in language used in arbitration award); *In re Nestle USA–Beverage Division, Inc.,* 82 S.W.3d 767, 775–78 (Tex. App.-Corpus Christi 2002, orig. proceeding) (holding trial court clearly abused its discretion by failing to order post-confirmation remand to arbitration panel to resolve ambiguity in award and also perhaps to remedy incompleteness). In the cases

---

**14.** In their briefing, the Lawyers have been careful not to assert that the Award is ambiguous. During oral argument in this court, the Lawyers' counsel again declined to assert that the Award is ambiguous, although counsel also did not assert that the Award is unambiguous. In any event, the Lawyers have not sought remand to the original arbitration panel based on any alleged ambiguity.

**15.** During appellate argument, counsel for the Lawyers confirmed that they are not alleging that the Award is incomplete. Although the Lawyers never made such an allegation in either their trial court or appellate filings, trial counsel for the Lawyers appeared to suggest that the Award is incomplete during part of the oral argument in the trial court. In any event, it is clear from the record that the Award is not incomplete. Therefore, even if the Lawyers had asserted the Award is incomplete, the trial court would not have abused its discretion in concluding the Award is complete.

**16.** Several of the cases cited by the Lawyers involve pre-confirmation remands. *See, e.g., Colonial Penn Ins. Co. v. Omaha Indemnity Co.,* 943 F.2d 327, 333–35 (3d Cir.1991); *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.,* 868 F.2d 52, 58 (3d Cir. 1989); *Weinberg v. Silber,* 140 F.Supp.2d 712, 722–24 (N.D.Tex.2001). Likewise, several of the statements cited by the Lawyers are obiter dicta. *See, e.g., M & C Corp. v. Erwin Behr GmbH & Co., KG,* 326 F.3d 772, 782–83 (6th Cir.2003); *Green v. Ameritech Corp.,* 200 F.3d 967, 977–78 (6th Cir.2000); *Savinis v. Goldberg, Persky & White, P.C.,* No. GD05–027781, 80 Pa. D. & C.4th 19, 22–30, —— A.2d —— (Pa.Ct.Com.Pl.2006) (stating that Pennsylvania trial court would consider arguments in the future to determine whether various issues should be remanded to the arbitration panel based on ambiguity in the award, following confirmation of the award under a Pennsylvania statute).

we have found holding or suggesting that issues should be remanded to the arbitration panel after confirmation in a case under the Federal Act or a state arbitration act, there is no discussion of how such a remand would be consistent with the statutory directive, whether under section 13 of the Federal Act or an analogous state statute, that judgments on arbitration awards should have the same effect and be subject to the same law as any other judgment of that court. Likewise, no mention is made in these opinions that most cases in which courts discuss remand to the arbitration panel involve pre-confirmation remands. In addition, in one case, the appellate court concluded it would be absurd to allow an arbitration panel to clarify the language of an award after the trial court had rendered judgment on the award. *See Legion Ins. Co. v. VCW, Inc.,* 198 F.3d 718, 720 (8th Cir.1999).

The Lawyers have asserted that two alternative legal standards apply. Under the first, trial courts must order a post-confirmation remand to the original arbitration panel whenever the trial court must interpret the language of an award, even though the language is not ambiguous or incomplete. The Lawyers assert that the trial court may enforce its judgment through ministerial, mandatory acts or by adopting an uncontested interpretation of the award language. This argument lacks merit. First, the parties have

not cited, and this court has not found, any case holding that this is the appropriate standard for determining whether the trial court should order a post-confirmation remand. Second, given that courts usually have to interpret judgments before they can enforce them and that parties often dispute the proper interpretation of judgments in enforcement proceedings, this rule would require post-confirmation remand in many cases and would conflict with a trial court's broad discretion in carrying out its duty to interpret and enforce its judgments. *See* TEX. R. CIV. P. 308; *Wilde,* 949 S.W.2d at 332–33; *Katz,* 848 S.W.2d at 374. Third, this standard would violate the express requirement of the Federal Act and the Texas Act that judgments rendered on arbitration awards be subject to the same law and given the same effect as judgments not rendered on arbitration awards.[17] *See* 9 U.S.C. § 13; TEX. CIV. PRAC. & REM. CODE ANN. § 171.092. Therefore, the trial court did not clearly abuse its discretion by failing to follow this proferred legal standard.

■ Under the Lawyers' second proferred legal standard, a trial court must order a post-confirmation remand to the original arbitration panel whenever a "collateral dispute" has arisen as to the interpretation of an award's language, even though the language is not ambiguous or incomplete. Some courts seem to have

---

**17.** The Lawyers argue a dispute exists as to what the arbitration panel meant in the Award and that, having heard the extensive evidence and arguments and issued the Award, the panel is in the best position to resolve these disputes. Even if this is true, it is a policy argument that does not change the unambiguous language of the Federal Act and the Texas Act, which could, but do not, provide for clarification of arbitration awards after confirmation or for treating judgments on arbitration awards differently from judgments following litigation. Another policy concern might be the need for finality, effi-

ciency, and a prompt resolution of the issues in arbitration, without allowing parties to seek to reopen issues years later during the enforcement-of-judgment phase, simply by asserting that there are interpretation disputes regarding language in the arbitration award upon which the trial court rendered judgment. *See Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 367 (Tex.2000) (discussing the need for finality and stating that "[l]itigation must end at some point if the public is to have any confidence in judgments").

embraced this standard, stating that it is an appropriate basis to remand a case to the original arbitration panel in a proceeding to enforce an arbitration award relating to a collective bargaining agreement under the Labor Management Relations Act ("Labor Act"). *See* 29 U.S.C. § 185 (1999); *Pace Union, Local 4–1 v. BP Pipelines*, 191 F.Supp.2d 852, 856–59 (S.D.Tex. 2002). Though federal courts enforcing arbitration awards under the Labor Act sometimes look to the provisions of the Federal Act for guidance, the Federal Act does not govern the enforcement of arbitration awards relating to collective bargaining agreements.[18] *See Brown v. Witco Corp.*, 340 F.3d 209, 216–18 (5th Cir.2003) (concluding that Labor Act, rather than Federal Act, governs the enforcement of arbitration awards relating to a collective bargaining agreement). In court proceedings relating to Labor Act arbitration awards, courts are not faced with statutory language requiring that judgments rendered on such awards be subject to the same law and given the same effect as judgments not rendered on arbitration awards. *See* 29 U.S.C. § 185. For these reasons, we conclude that cases involving remands of labor arbitration cases are not on point.[19]

The parties have not cited, and this court has not found, any case holding that trial courts should apply the Lawyers' second proffered legal standard to determine whether to order a post-confirmation remand to the arbitration panel in cases under the Federal Act or a state arbitration act. Like the Lawyers' first proffered legal standard, their second legal standard conflicts with the trial court's broad discretion in carrying out its duty to interpret and enforce its judgments as well as the unambiguous language of the Federal Act and Texas Act. *See* 9 U.S.C. § 13; TEX. CIV. PRAC. & REM. CODE ANN. § 171.092; TEX. R. CIV. P. 308; *Wilde*, 949 S.W.2d at 332–33; *Katz*, 848 S.W.2d at 374.

■ Though, at times, the Lawyers appear to argue that a post-confirmation remand is appropriate for the arbitration panel to interpret language of the award even if that language is not part of the trial court's judgment on the award, they do not actually make this argument.[20] The Lawyers seek a remand regarding the Royalty Language, which is definitely part of the trial court's Judgment. The Law-

---

18. In addition, the Texas Act does not apply to such arbitrations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(1) (Vernon 2005).

19. Likewise, the Lawyers also rely on a case involving the enforcement of an arbitration award under the Railway Labor Act. *See Brotherhood Ry. Carmen Div., Transp. Commc'ns Int'l Union v. Atchison, Topeka & Santa Fe R.R. Co.*, 956 F.2d 156, 157 (7th Cir.1992). The Federal Act does not apply to arbitration awards under this labor statute, and the enforcement provisions for such awards do not contain any language stating that judgments rendered on such awards shall be subject to the same law and given the same effect as judgments not rendered on arbitration awards. *See* 45 U.S.C. § 159 (1999). Therefore, this case is also not on point.

20. If the Lawyers had argued that the trial court did not award them relief in the Judgment based on the Page 7 Language but that the Lawyers wanted the court to add that relief now, this argument would have lacked merit because the trial court has no jurisdiction to make a material change in the substance of the relief awarded in the Judgment. *See Katz*, 848 S.W.2d at 374 (stating that the only limit on a trial court's authority to enforce its judgments is that enforcement orders must not make a material change in the substantial adjudicated portions of the judgment); *Harris County Appraisal Dist. v. West*, 708 S.W.2d 893, 896–97 (Tex.App.-Houston [14th Dist.] 1986, no writ) (holding that trial court's enforcement order was void because it attempted to materially change the relief awarded in the trial court's judgment).

yers also seek remand regarding the Page 7 Language, which they contend was part of the Judgment because: (1) the arbitration panel awarded the Lawyers relief by means of the Page 7 Language; (2) the trial court stated in the judgment that the court confirmed the Award "in its entirety"; and (3) the court stated that a copy of the Award was attached to the Judgment. Tanox asserts that the arbitration panel did not award the Lawyers relief by means of the Page 7 Language and that, even if the panel had done so, the trial court did not award this relief in the Judgment, and therefore the Lawyers are not entitled to it. The trial court did not decide these issues; instead, the trial court decided that it, rather than the arbitration panel, would decide these issues and interpret and enforce the Judgment.

In this mandamus proceeding, we presume, without deciding, the following:

- The arbitration panel awarded the Lawyers the future interests stated in the Page 7 Language.
- The trial court, in its Judgment, awarded the Lawyers the future interests stated in the Page 7 Language.
- There are certain circumstances under which a trial court may order a post-confirmation remand to the arbitration panel in cases under the Federal Act or a state arbitration act.

Nonetheless, even operating under these presumptions, we conclude that the trial court did not clearly abuse its discretion by determining that the Lawyers have not shown that remand is appropriate under the circumstances in this case.[21] Accordingly, we hold that mandamus relief is not warranted. The trial court did not clearly abuse its discretion by denying the Lawyers' motion to remand or in denying their motion to reconsider. We overrule the Lawyers' first issue.

**D. Did the trial court clearly abuse its discretion by denying a motion to compel arbitration of issues before the same arbitration panel that already rendered an award that no party claims is ambiguous and that was confirmed by final judgment?**

The Lawyers also assert that the trial court clearly abused its discretion by denying their alternative motion to compel arbitration before the original arbitration panel. The Lawyers have not cited any cases supporting the notion that it is proper to grant a motion to compel arbitration after denying a motion to remand to the original arbitration panel. The Lawyers state that a trial court's confirmation of an arbitration award and rendition of judgment thereon do not erase the parties' agreement to arbitrate their disputes. This statement is correct; however, the Federal Act and the Texas Act provide that a judgment on an arbitration award has the same effect and is subject to the same law as all other judgments of the rendering court, which, in Texas courts, means that the trial court interprets and enforces the judgment. Under these statutes, the trial court's interpretation and enforcement do not supplant the parties' arbitration agreement; rather, they vindicate this agreement and give effect to the end result of the arbitration in the manner provided by the Federal Act and the Texas Act.[22] The Lawyers have not shown that

---

**21.** Tanox asserts that the issue of whether the trial court abused its discretion is premature because the trial court has not yet determined how it will enforce the Judgment or whether the Judgment is ambiguous. However, the Lawyers assert that the trial court clearly abused its discretion under the legal standards they advocate. If these legal standards were correct, then it might have been possible to have found a clear abuse of discretion. Therefore, this mandamus proceeding is not premature.

**22.** The Lawyers also note that, in November 1997, the trial court ordered Tanox and the Lawyers to arbitrate all claims and disputes.

the trial court clearly abused its discretion by denying their motion to compel arbitration before the original arbitration panel.

### E. Did the trial court clearly abuse its discretion by denying the Lawyers' request that the court compel arbitration before a new arbitration panel?

After moving the trial court to compel arbitration before the original arbitration panel, the Lawyers stated that, although the parties agree that a new arbitration panel should not be empaneled, if absolutely necessary and required under the law, the trial court should compel arbitration before a new arbitration panel. Although they seek mandamus relief regarding the trial court's denial of this request, the Lawyers' petition does not contain any argument, analysis, record citations or legal authority in support of the proposition that the trial court clearly abused its discretion by denying this request. *See* Tex. R.App. P. 52.3(h) (stating that "[t]he petition must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the appendix or record"); *In re Citizens Supporting Metro Solutions, Inc.,* No. 07–00190–CV, 2007 WL 4277850, at *4 (Tex. App.-Houston [14th Dist.] Oct. 18, 2007, orig. proceeding) (mem.op.) (holding that relator waived argument because its petition did not contain appropriate citations to the record and authorities). Therefore, we deny the Lawyers' petition for mandamus as to the trial court's denial of the Lawyers' request that the court compel arbitration before a new arbitration panel. In any event, even if the Lawyers had presented argument on this issue, we still would hold that the trial court did not

clearly abuse its discretion by concluding that it was not absolutely necessary and required under the law to compel arbitration before a new arbitration panel. Accordingly, we hold that the trial court did not clearly abuse its discretion by denying the Lawyers' motion to compel arbitration, and we overrule the Lawyers' second issue.[23]

### V. CONCLUSION

Presuming, without deciding, that the Lawyers are correct in their interpretation of the Page 7 Language and of the Judgment, and presuming that there are certain circumstances under which a trial court may order a post-confirmation remand to the original arbitration panel in cases under the Federal Act or the Texas Act, we conclude the trial court did not clearly abuse its discretion by determining that the Lawyers failed to show that remand is appropriate under the circumstances of this case. Therefore, the trial court did not clearly abuse its discretion by denying the Lawyers' motion to remand and their motion to reconsider this ruling. Likewise, the trial court did not clearly abuse its discretion by denying the Lawyers' motion to compel arbitration before the original arbitration panel or by denying their request that the trial court compel arbitration before a new arbitration panel. Accordingly, we deny the Lawyers' petition for a writ of mandamus.

However, the parties did arbitrate all claims and disputes, and the present issues relate to the enforcement of the trial court's Judgment based on the Award from that arbitration.

**23.** Given that we have not found any clear abuse of discretion, we do not address the Lawyers' third issue in which they assert that they have no adequate remedy at law.