

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-18-00419-CV

---

IN RE J.W., RELATOR

---

Original Proceeding
Trial Court No. 15-02463-16

---

Before Sudderth, C.J.; Kerr and Pittman, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Relator J.W. (Father) filed a mandamus petition challenging the trial court's temporary orders requiring him to enroll his three children in school in Keller ISD, a district in which neither parent lives. Father contends that the temporary orders violate family code section 156.006(b) because they have the effect of changing his designation in the final divorce decree as the parent with the exclusive right to designate the children's primary residence while a modification suit is pending. *See* Tex. Fam. Code Ann. § 156.006(b). We will conditionally grant relief. *See* Tex. R. App. P. 52.8(c).

## Background

Mother and Father divorced in April 2016. The agreed divorce decree named them joint managing conservators of their three children who were six, four, and two years old at the time. Father was designated as the conservator with "the exclusive right to designate the primary residence of the children without regard to geographic restriction." Mother had possession of the children on Tuesdays and every other weekend during the school year, and the parties had a two-week-on-two-week-off summer possession schedule.

The decree granted each parent the independent right to make decisions regarding the children's education. Father homeschooled them, but during the summer of 2018, Mother became increasingly concerned that the children were behind academically so she had them tested. According to her, she and Father

discussed the situation and agreed that the children needed to be enrolled in school and that they would change to a week-on-week-off possession schedule once school started.

Father lives in Northwest ISD and enrolled the children in an elementary school in the district. They were set to start school there on August 27, 2018. Mother, who lives in Birdville ISD, decided that she wanted to enroll the children in an elementary school in Keller ISD near her house. According to Mother, even though neither she nor Father lives in that district, she could enroll her children there because Keller has open enrollment.

School started in Keller ISD on August 15, 2018. Two days before, Mother moved to modify the parent-child relationship. That same day, the trial court entered a temporary restraining order giving Mother possession of the children and restraining Father from taking any action to remove or unenroll the children from Keller ISD or to enroll the children in any other school district. The children started school in Keller on Wednesday, August 15. Later that day, the trial court vacated the restraining order, and the children went back to Father on Thursday and Friday. The next week, Mother had possession, and she sent the children to school in Keller that week. The following Monday, Father had possession, and the children were dropped off at an elementary school in Northwest ISD for their first day of school there.

On the children's first day at Northwest ISD, the trial court held a lengthy evidentiary hearing at which Mother, Father, and Father's mother testified. Mother

3

testified that when she had the children tested at Sylvan Learning Center at the end of July, they tested below grade level. According to Mother, the oldest child, who was eight years old at the time of the hearing and starting the third grade, was "having a hard time with math to the point of being frustrated, not wanting to try it."[1] The middle child, who was six and entering the first grade, was functioning as a "mid-kindergarten aged child" and could not read. It was Mother's understanding that the child "should be reading above his grade level. So he should be reading about almost at a second grade level." The youngest child, who had just turned five and was going into kindergarten, "was testing at a preK level" and, other than the letters A and B and the numbers 0 and 1, did not know his letters or numbers. Mother wanted the children to go to school in Keller ISD because she feared that if the children went to school in Northwest ISD, Father would pull them out of school and homeschool them; according to Mother, he had pulled the oldest child out of public school after kindergarten and believed that "home-schooling was the way to go because that's how he was raised."

Father stated that he intended to keep the children in school in Northwest ISD. He agreed that they were slightly behind and that "they are a little bit lower" than he preferred. He admitted that the middle child struggled with reading. He also conceded

---

[1]In her affidavit attached to her motion to modify, Mother stated that the oldest child was functioning at a second-grade level. There was no evidence at the hearing regarding that child's functioning grade level.

4

that the youngest child had trouble identifying letters and numbers other than A, B, 0, and 1 but testified that the child could say the ABCs and could count. Father's mother did not agree that the children were behind in school.

Mother also expressed concern with the children's hygiene and living conditions when they were in Father's possession. Mother was not sure whether Father was living with his parents in Denton or was living in his house in Justin (which, according to Mother, was uninhabitable because it was undergoing renovations and was without running water for a time because a pipe had burst). Mother also stated that Father did not ensure that the children were bathed or that their hair and teeth were brushed and did not treat one of the children's eczema. Father countered that he was no longer living with his parents but was back at his home in Justin, which had been renovated to a point where it was habitable and had running water. He contended that he made sure that the child's eczema was treated and that the children bathed and brushed their teeth. He complained that they were dirty when they returned from Mother.

There was also testimony regarding Father's 24-hours-on-48-hours-off work schedule (he's a fireman). Because of his schedule, the children are left in the care of his mother or a friend from Father's church when he is working. In contrast, Mother's work schedule allows her to spend time with the children each day, and the children are enrolled at an after-school program at Mother's workplace, where she coaches gymnastics.

At the hearing's conclusion, the trial court ordered that the children be enrolled in the elementary school in Keller that they had attended the week before and modified the possession schedule to week-on-week-off. But the trial court made clear that Father remained the parent with the right to designate the children's primary residence.

Father moved for reconsideration, and after a hearing, the trial court denied his motion. The trial court signed temporary orders reflecting its rulings and found that the orders "are necessary because the children's present circumstances would significantly impair the children's physical health or emotional development, and the requested temporary orders are in the best interest of the children."

**Standard of Review**

Because temporary orders are not appealable, mandamus is an appropriate means to challenge them. *In re Strickland*, 358 S.W.3d 818, 820 (Tex. App.—Fort Worth 2012, orig. proceeding). We grant the extraordinary relief of mandamus only when the trial court has clearly abused its discretion and the relator lacks an adequate appellate remedy. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable this it is a clear and prejudicial error of law or if it fails to correctly analyze or apply the law to the facts. *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302– 03 (Tex. 2016) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). With respect to the resolution of fact issues, we may not

6

substitute our judgment for the trial court's and may not disturb the trial court's decision unless it is arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding). In other words, we defer to a trial court's factual determinations that have evidentiary support, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

## Temporary Orders in Modification Suits

Family code section 156.006(b) limits a trial court's discretion to render temporary orders while a modification suit is pending. A trial court cannot render a temporary order that has

> the effect of creating a designation, or changing the designation, of the person who has the exclusive right to designate the primary residence of the child, or the effect of creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence

unless that temporary order is in the child's best interest and the child's present circumstances would significantly impair the child's physical health or emotional development. Tex. Fam. Code Ann. § 156.006(b)(1).[2]

Section 156.006 imposes a high burden on the movant to present evidence that a child's present circumstances are *significantly* impairing his or her physical health or emotional development. *See In re Poteet*, No. 02-13-00107-CV, 2013 WL 1830281, at

---

[2]Two other statutory circumstances authorize such a temporary order, but neither is relevant to this case. *See* Tex. Fam. Code Ann. § 156.006(b)(2)–(3).

*2 (Tex. App.—Fort Worth May 2, 2013, orig. proceeding) (mem. op.); *see also In re Serio*, No. 03-14-00786-CV, 2014 WL 7458735, at *2 (Tex. App.—Austin Dec. 23, 2014, orig. proceeding) (mem. op.) ("Texas courts have recognized that the 'significant impairment' standard in section 156.006(b)(1) is a high one, requiring evidence of bad acts that are more grave than violation of a divorce decree or alienation of a child from a parent." (citations omitted)); *Strickland*, 358 S.W.3d at 822–23 ("[S]pecific allegations as to how a child's emotional development will be significantly impaired are statutorily required."); *In re Payne*, No. 10-11-00402-CV, 2011 WL 6091265, at *2 (Tex. App.—Waco Dec. 2, 2011, orig. proceeding) (mem. op.) ("[T]he standard for making a modification in a temporary order that has the effect of changing the designation of the person who has the exclusive right to designate the primary residence of the child has been set very high by the Legislature in requiring the finding of significant impairment.").

**Discussion**

Father asserts that the trial court abused its discretion by entering temporary orders requiring the children to attend a specific school in Keller ISD. He argues that the orders violated section 156.006(b)(1) because the trial court effectively changed his designation as the person with the exclusive right to designate the children's primary residence without any evidence that the children's present circumstances would significantly impair their physical health or emotional development.

8

The temporary orders do not change Father's designation as the person with the exclusive right to designate the children's primary residence; they affect only the school the children attend. But because the orders dictate that the children must attend a specific elementary school in Keller ISD, they have the effect of creating a geographic area in which Father must maintain the children's residence because they create a geographic limitation whereas the decree has none. *See* Tex. Fam. Code Ann. § 156.006(b); *see also Serio*, 2014 WL 7458735, at *1 ("Although the order expressly affects only the school the children attend, [Father] acknowledges that the court's temporary order effectively deprives [Mother] of any discretion inherent in her right to determine their children's primary residence, which correspondingly has the effect of changing her designation as the person with the exclusive right to designate the children's primary residence."); *Strickland*, 358 S.W.3d at 821 ("A temporary order that deprives a custodial parent of any discretion inherent in the right to determine the child's primary residence has the effect of changing the designation of the person with the exclusive right to designate the child's primary residence.").

Mother contends that the temporary orders do not have the effect of changing Father's designation or creating a geographic area within which Father must maintain the children's primary residence, relying primarily on *In re Cole*, No. 03-14-00458-CV, 2014 WL 3893055 (Tex. App.—Austin Aug. 8, 2014, orig. proceeding) (mem. op.). In that case, the decree gave the father, who lived in Travis County, the exclusive right to designate the children's primary residence within Travis or Dallas County. *Id.* at *1.

9

The appellate court concluded that temporary orders requiring the children to attend school in Eanes ISD (which is in Travis County but the district in which neither parent lived) did not have the effect of changing the father's designation of the person with the exclusive right to designate the children's residence because the father's "ability to designate his home, or any other location in Travis County or Dallas County, as the children's primary residence is unaffected by the trial court's order that they attend school in the Eanes District." *Id.* at *2.

We question the reasoning in *Cole* because it seems that the father's ability to designate the children's primary residence in Dallas County would indeed be affected by an order requiring the children to attend school about 200 miles away. Regardless, the legislature has since amended section 156.006(b) to insert the phrases "creating a designation, or" and "or the effect of creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence." *See* Act of May 11, 2017, 85th Leg., R.S., ch. 91, § 1, sec. 156.006(b), 2017 Tex. Sess. Law Serv. 201, 201 (current version at Tex. Fam. Code Ann. § 156.006(b)). Because the legislature has expanded the type of temporary order that requires additional findings under section 156.006(b), *Cole* is inapposite.

Because we have determined that the temporary orders have the effect of creating a geographic area in which Father must maintain the children's residence, we must determine whether the evidence supports the trial court's finding that the children's present circumstances significantly impaired their physical health or

10

emotional development. *See* Tex. Fam. Code Ann. § 156.006(b)(1). As noted, the "significant impairment" standard is high. *See Poteet*, 2013 WL 1830281, at *2; *Strickland*, 358 S.W.3d at 822–23. "To establish 'significant impairment' of the children's physical health or emotional development, the movant must present evidence of bad acts or omissions committed against the children." *In re Eddins*, No. 05-16-01451-CV, 2017 WL 2443138, at *4 (Tex. App.—Dallas June 5, 2017, orig. proceeding) (mem. op.).

Here, even if we accept Mother's testimony as true, the children's circumstances did not *significantly* impair their physical health or emotional development. *See, e.g., In re Charles*, No. 03-17-00731-CV, 2017 WL 5985524, at *4 (Tex. App.—Austin Dec. 1, 2017, orig. proceeding) (mem. op.) (concluding that evidence regarding mother's interference with father's visitation and communications with the child; the child's dirty, ill-fitting, or damaged clothes and shoes; the child's poor hygiene; and a "bad case of scabies," which allegedly occurred about eight months before the modification petition was filed, did not rise to the level of significant impairment); *In re Kyburz*, No. 05-15-01163-CV, 2015 WL 6935912, at *2 (Tex. App.—Dallas Nov. 10, 2015, orig. proceeding) (mem. op.) (determining that evidence that CPS had investigated because children were dirty, had bugs in their hair, and were injured in mother's home; that father had witnessed children being disheveled, "snotty," and wearing clothes that did not fit; and that mother might be forced to move was insufficient to show significant impairment); *In re Rather*, No. 14-

11

11-00924-CV, 2011 WL 6141677, at *2 (Tex. App.—Houston [14th Dist.] Dec. 8, 2011, orig. proceeding) (mem. op.) (holding that evidence that father's relationship with son might be adversely affected by mother's move, that mother's home was messy and unsanitary, that child was not always appropriately dressed for cold weather, and that child was sometimes not properly supervised was insufficient to show significant impairment); *In re Escamilla*, No. 04-02-00258-CV, 2002 WL 1022945, at *2 (Tex. App.—San Antonio May 22, 2002, orig. proceeding) (not designated for publication) (concluding that complaints about mother's attention to children's schooling and general appearance amounted to differences in child-rearing methods and preferences and did not support temporary orders changing person with right to designate children's primary residence). While it does appear that the children were slightly behind academically and that Father did not keep them as clean as Mother would have liked, the evidence in this case does not satisfy the "significant impairment" standard set out by the legislature in section 156.006(b)(1).

It is worth noting, however, that the children's first week at school in Keller was a success. As Mother observed:

> The first change [in their behavior and demeanor] was confidence. All of them were lacking confidence in that they were even smart enough to do school. That was a concern that I really had. Second was they became so excited about all the friends they were having. [One child] went and joined book club. [Another child] went and joined . . . game club. They were just having a blast. They were interacting. It was the first time that they saw school as a positive thing and not as punishment.

We recognize that the trial court's temporary orders might have been an attempt to maintain the status quo pending final trial.[3] But here, there was no evidence of significant impairment. Because section 156.006(b) precludes a trial court from issuing an order effecting a change in the designation of the person having the right to designate the children's primary residence without evidence triggering a statutory exception to this prohibition, the trial court abused its discretion by effectively creating a geographic area in which Father must maintain the children's primary residence. *See* Tex. Fam. Code Ann. § 156.006(b); *Strickland*, 358 S.W.3d at 821–23. We therefore sustain Father's issue.[4]

## Conclusion

Having determined that Father is entitled to relief, we conditionally grant his mandamus petition, and we direct the trial court to vacate its August 27, 2018 order designating school attendance and the section of its November 28, 2018 temporary

---

[3]And we hope and trust that the parents in this case can reach a workable arrangement regarding the children's schooling that is in their best interest. If the children continue to attend school in Keller ISD, they face a thirty-minute commute from Father's house to school. They face an identical commute from Mother's house if they attend school in Northwest ISD.

[4]Father also complains that the trial court abused its discretion by expressly declining to change Father's primary-conservatorship designation despite making a significant-impairment finding. Because we have determined that the trial court's temporary orders were an abuse of discretion, we need not address this argument. *See* Tex. R. App. P. 47.1.

13

orders entitled "Children's School."[5] The writ will issue only in the unlikely event that the trial court fails to comply with our directive.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: May 23, 2019

---

[5]In his prayer, Father asks us to order the trial court to vacate the November 28, 2018 temporary orders in their entirety to restore the divorce decree's access and possession schedule. But outside of his "Summary of Argument" and "Statement of Facts" sections in his mandamus petition, Father does not attack the week-on-week-off possession schedule in the temporary orders or provide any argument or authority that such a possession schedule violates section 156.006. *See* Tex. R. App. P. 52.3(h) (stating that a mandamus petition "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the appendix or record"). Mother pointed this out in her response, but Father did not address her contention in his reply. Father also does not attack sundry other provisions in the temporary orders that were not in the decree. Accordingly, we will not compel the trial court to vacate the temporary orders in their entirety. *See In re TCW Glob. Project Fund II, Ltd.*, 274 S.W.3d 166, 171 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding [mand. denied]) (holding that relators waived an argument by not briefing the argument in their mandamus petition); *In re Akin Gump Strauss Hauer & Feld, LLP*, 252 S.W.3d 480, 495 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (holding that relator waived an argument by not briefing the argument in its mandamus petition).