Affirmed as Modified and Memorandum Opinion filed August 9,
2011.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00119-CV



 

Woody K. Lesikar Special
Trust and Woodrow V. Lesikar Family Trust, through their Trustee, Woody K.
Lesikar, and the Estate of Woodrow V. Lesikar, Deceased, through its Executor,
Woody K. Lesikar, Appellants

V.

Carolyn Ann Lesikar Moon,
Individually and as named Trustee of the Carolyn Ann Lesikar Moon Special Trust, Appellee

 



On Appeal from the 149th
District Court

Brazoria County, Texas

Trial Court Cause No. 25560



 

MEMORANDUM  OPINION

 

The Woody K. Lesikar Special Trust and Woodrow V.
Lesikar Family Trust, through their trustee, Woody K. Lesikar, and the estate
of Woodrow V. Lesikar, deceased, through its executor, Woody K. Lesikar, appeal
the trial court’s turnover order in favor of Carolyn Ann Lesikar Moon,
individually and as named trustee of the Carolyn Ann Lesikar Moon Special
Trust.  We modify the trial court’s turnover order and affirm the turnover order
as modified.

BACKGROUND

Woody K. Lesikar and Carolyn Ann Lesikar Moon are the
children of Woodrow V. Lesikar.[1] 
Woodrow Lesikar established the Woodrow V. Lesikar Family Trust in 1990 and named
himself and his son Woody as co-trustees.  The Family Trust provided that upon Woodrow
Lesikar’s death, certain trust assets would be divided equally between Woody
and Carolyn and placed into a special trust for each of them; Woody was to be
the trustee of his special trust, and Carolyn was to be the trustee of her
special trust.  When Woodrow Lesikar died in 2001, the Family Trust became irrevocable
and Woody became the sole trustee of the Family Trust.

I.         Brazoria County
Litigation

Carolyn sued Woody in 2003 in Brazoria County
seeking, among other things, to compel Woody to fund and relinquish control of
her special trust.[2] 
Carolyn alleged claims against Woody for breach of fiduciary duty, conversion,
negligence, civil conspiracy, and tortious interference with inheritance.  Woody
argued that “because, in his belief, Carolyn is unable to manage her share of
the Family Trust assets, he, in his unfettered discretion, could choose not to
fund her special trust.”  See Lesikar v. Moon, 237 S.W.3d 361, 365 (Tex.
App.—Houston [14th Dist.] 2007, pet. denied).   

The trial court signed a final judgment in favor of
Carolyn on September 13, 2005.  The September 2005 final judgment specified
which Family Trust assets were to be distributed to Woody’s and Carolyn’s
special trusts, and which were to remain in the Family Trust for distribution
to other beneficiaries.  The judgment distributed several pieces of real
property to Carolyn’s special trust and awarded attorney’s fees to Carolyn. 
The final judgment also provided that upon the death of Woodrow Lesikar’s wife,
Margie Lesikar, additional trust assets would be distributed equally between
Woody’s and Carolyn’s special trusts.  

Woody sought to supersede the September 2005 final
judgment pending appeal.  On November 21, 2005, the trial court signed an order
fixing the amount and conditions of Woody’s supersedeas bond; the order also
provided:

            IT IS FURTHER
ORDERED that none of the property specified in the Final Judgment to be
distributed to [Carolyn’s special trust] shall be disposed of or encumbered in
any manner to obtain the amount needed to satisfy this supersedeas requirement.

Margie Lesikar died during
the pendency of the appeal, which triggered the distribution of additional
trust funds to Woody’s and Carolyn’s special trusts under the September 2005 final
judgment.  The trial court signed an order modifying the amount of the
supersedeas bond; the parties do not dispute that the bond was increased to
secure these additional funds.  The order also provided:

As a further
condition of continuing to suspend enforcement of the judgment entered in this
appeal, Defendant is prevented from selling, encumbering, or otherwise
depleting Plaintiff’s portion of the trusts’ assets for Defendant’s attorney’s
fees.

On appeal, this court reversed
and remanded as to the amount of Carolyn’s reasonable and necessary attorney’s
fees but affirmed the trial court’s September 2005 final judgment in all other
respects.  See id. at 378–79.  The Texas Supreme Court denied Woody’s
petition for review, and our mandate issued on October 23, 2008.

II.        Harris County
Litigation

Woody, acting individually and as trustee of his special
trust, filed a separate lawsuit in Harris County against the Family Trust on
November 5, 2008, alleging that he personally advanced the Family Trust
$600,000 to pay for attorney’s fees that the Family Trust “was forced to
expend” in “defending its property” and “contesting various unfounded
allegations” in the Brazoria County litigation.  Woody claimed entitlement to
reimbursement under the Texas Property Code for these advancements.  To secure
his reimbursement claim, he filed various liens and lis pendens on the real
property awarded to Carolyn’s special trust in the September 2005 final
judgment from the Brazoria County litigation.[3] 
  

III.      Application for
Turnover Relief

Carolyn filed an application for turnover relief in
the Brazoria County trial court on January 14, 2010, contending that Woody “has
claimed in a court in Harris County that he should be reimbursed for $600,000
in attorney’s fees he has allegedly advanced so that the Family Trust could
fight the Judgment’s award of property to [Carolyn’s special trust].”  She informed
the Brazoria County trial court that Woody had recorded liens on the property
awarded to her special trust by the September 2005 final judgment, “thus
preventing Carolyn’s unencumbered ownership of the property required by the
Judgment and the orders of this court establishing supersedeas bond
requirements.”  She requested that the trial court order Woody to turn over the
property awarded to her special trust in the September 2005 final judgment and
to “permanently enjoin Woody from interfering with Carolyn’s ownership, use,
and enjoyment of the property.”[4]

An oral hearing was held on the motion on January 29,
2010.  Woody objected to the setting, moved for a continuance, and filed a plea
to the jurisdiction on the day of the hearing.[5] 
He argued that Carolyn’s requested relief “present[s] new claims which require
the filing of a new suit and a disposition on the merits consistent with Rule
166(a) Texas Rules of Civil Procedure and the notice provisions for setting
trial on the merits.”  Woody also requested a jury trial.

At the hearing on Carolyn’s application for turnover
relief, the trial court stated:

THE JUDGE: I believe . . .
that’s a law issue as to the turnover order and I can grant that . . . .  I
believe it’s a law issue as to the unencumbered real estate and I’m going to
order those [liens] be released[,] and it is a law issue as to whether or not [Woody]
is entitled to attorney’s fees in defending the trust to come out of any of [Carolyn’s]
share that she’s been awarded[,] and I’m denying that claim for attorney’s fees
. . . .

The trial court denied
Woody’s plea to the jurisdiction.  The trial court signed a turnover order on
January 29, 2010, in which it stated that “[t]he Court finds that [Woody]
owe[s] [to Carolyn’s special trust] the following amounts . . . : $125,000 for
½ of the Margie Lesikar [additional trust] funds which were owed [under the September
2005 final judgment.].”  The turnover order also included the following
provisions:

IT IS FURTHER ORDERED, ADJUDGED
AND DECREED that [Woody] shall release all liens or encumbrances of any type
recorded against property awarded to [Carolyn’s special trust] in the Final
Judgment signed September 15, 2005 . . . .

It is further ORDERED that [Woody]
will sign or execute any other documents requested by [Carolyn] to clear any
title issues relating to the property awarded to [Carolyn’s special trust] in
the Final Judgment signed September 15, 2005 . . . .

It is further
ORDERED that [Woody is] prohibited from executing, filing, placing, or
recording any liens or encumbrances of any type against property awarded to
[Carolyn’s special trust] in the Final Judgment signed September 15, 2005.[6]

In five issues on appeal, Woody argues that (1) the
trial court acted without jurisdiction in issuing a turnover order that effectively
adjudicates the merits of Woody’s claim for reimbursement from the additional
trust funds and real property awarded to Carolyn’s special trust; and (2) the
adjudication of Woody’s reimbursement claim was not the proper subject of a
turnover proceeding and could have been decided only under proper summary
judgment procedures or by a timely-noticed jury trial on the merits.  We modify
the trial court’s turnover order and affirm the turnover order as modified.

ANALYSIS

Texas Civil Practice and Remedies Code section
31.002, commonly referred to as the “turnover statute,” allows a party who has
secured a final judgment to collect the judgment through a separate court
proceeding.  See Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (Vernon
2008); Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat’l Dev. &
Research Corp., 299 S.W.3d 106, 113 (Tex. 2009).  The turnover statute
permits a trial court to order the judgment debtor to turn over nonexempt
property that is in the judgment debtor’s possession or control, including
present or future rights to property.  See Tex. Civ. Prac. & Rem.
Code Ann. § 31.002.  As a general rule, turnover orders are final, appealable
orders.  Davis v. West, 317 S.W.3d 301, 309 (Tex. App.—Houston [1st
Dist.] 2009, no pet.) (citing Burns v. Miller, Hiersche, Martens &
Hayward, P.C., 909 S.W.2d 505, 506 (Tex. 1995) (per curiam)).  We review
turnover proceedings under an abuse of discretion standard.  See Beaumont
Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991).

I.         Jurisdiction

Woody argues in his first issue that the trial court
had no jurisdiction to issue the turnover order because (1) the trial court did
not have personal jurisdiction over Woody in his individual capacity; and (2)
the trial court’s plenary power had expired.[7] 


A.        Personal Jurisdiction

Woody argues in support of his first issue that “[i]t
is a fundamental precept of due process . . . that a party such as Woody K.
Lesikar can not [sic] be hailed [sic] into Court in his individual capacity
without being properly named in process which has been personally serviced
[sic] on him as required by Texas law and the Texas Rules of Civil Procedure.”

This complaint pertains to an asserted error that
affects only the rights of Woody individually; the Woody K. Lesikar Special
Trust and Woodrow V. Lesikar Family Trust, through their trustee, Woody K.
Lesikar, and the estate of Woodrow V. Lesikar, deceased, through its executor,
Woody K. Lesikar, have no standing to complain of errors that affect only the
rights of Woody individually.  See Jordan v. Bustamante, 158 S.W.3d 29,
39 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (“A party may not
complain of errors that do not affect it or that merely affect the rights of
others.”); Copher v. First State Bank of Pittsburg, Tex., 852 S.W.2d
738, 740 (Tex. App.—Fort Worth 1993, no writ) (“Copher asserts . . . that the
turnover order must be reversed because Myrna Allmond, an interested party, was
never given notice of the turnover hearing.  We hold that Copher has no
standing here to assert the interests of Myrna Allmond.”).[8] 
The parties do not dispute that Woody is not a party to this appeal in his
individual capacity.  We overrule Woody’s issue as it relates to the trial
court’s alleged assertion of personal jurisdiction over Woody in his individual
capacity in the trial court’s turnover order.

B.        Plenary Power

Woody also argues that the trial court had no
jurisdiction to issue the turnover order because its plenary power had
expired.  We evaluate this argument as it relates to the provisions in the
turnover order that (1) directed Woody to turn over $125,000 in satisfaction of
the September 2005 final judgment’s award of half the “remaining assets” of the
additional trust funds to Carolyn’s special trust; and (2) ordering Woody to
release the liens on the real property awarded to Carolyn’s special trust in
the September 2005 final judgment, clear all title issues, and refrain from
filing or recording new liens.

Carolyn responds that Woody’s argument should fail
because the trial court has inherent power to enforce its previously entered
judgments through a turnover order even after its plenary power has expired.  See
Tex. R. Civ. P. 329b(d) (expiration of trial court’s plenary power); Tex.
R. Civ. P. 621 (enforcement of judgments); Arndt v. Farris, 633 S.W.2d
497, 499 (Tex. 1982) (“While the trial court’s power to vacate, modify,
correct, or reform a judgment ceases under Rule 329b(d) thirty days after the
judgment is signed, the court’s power to enforce its judgment is not so
limited. . . .  The general rule is that every court having jurisdiction to
render a judgment has the inherent power to enforce its judgments.”); Cross,
Kieschnick & Co. v. Johnston, 892 S.W.2d 435, 438 (Tex. App.—San
Antonio 1994, no writ) (turnover statute provides procedures by which diligent
judgment creditors can reach the property of their judgment debtors owed under
final judgment).[9] 


Woody responds in his reply brief that although the
trial court can issue a turnover order after the expiration of its plenary
power, “the prevailing party on a judgment is not free to bring new legal
issues and factual contentions which were not part of the subject matter of a
prior case in the guise of post-judgment pleadings such as Motions for Turnover
Order and thereby avoid the requirements of a full trial on the merits.”  Woody
cites Steenland v. T.C.B. National Ass’n, 648 S.W.2d 387, 389–91 (Tex.
App.—Tyler 1983, writ ref’d n.r.e.), for the proposition that Carolyn’s
“underlying claims which resulted in the Final Judgment . . . did not include
the issues raised in [her] Motion for Turnover Order.”  See Steenland, 648
S.W.2d at 389–91 (turnover proceeding held to be an inappropriate vehicle for
post-judgment determination of amount of excess homestead value available for
collection when that amount was not determined in trial of underlying case).  

We first address Woody’s argument that the turnover
order erroneously adjudicated the merits of his reimbursement claim against the
$125,000 in additional trust assets awarded to Carolyn’s special trust.  He
asserts that the trust assets were required to be distributed “subject to
[trust] obligations,” including but not limited to Woody’s reimbursement claim,
and that the trial court’s turnover order effectively adjudicated his
reimbursement claim in Carolyn’s favor.  

The September 2005 final judgment states: “Within
thirty (30) days of the date of Margie Lesikar’s death, all such remaining
assets shall be divided equally between the Carolyn Ann Lesikar Moon Special
Trust and the Woody K. Lesikar Special Trust . . . .”  The turnover order
provision ordering Woody to turn over $125,000 resulted from the trial court’s
determination that this amount represented half of the “remaining assets” of
the additional trust funds owed to Carolyn’s special trust according to the September
2005 final judgment.    

Woody has not supported his assertion on appeal that this
provision of the turnover order constitutes an adjudication of his
reimbursement claim.  Woody does not identify and we cannot locate any information
in the record regarding (1) the total value of the additional trust assets on
the date of Margie Lesikar’s death; (2) the source of the alleged requirement
that the “remaining assets” be distributed “subject to [trust] obligations;” or
(3) evidence that any alleged “obligations” were or were not paid before the
trial court ordered Woody to turn over $125,000 as half of the “remaining
assets” to Carolyn.  

The trial court has jurisdiction to enforce its
judgment and may employ suitable methods to do so.  Tex. R. Civ. P. 621; Arndt
v. Farris, 633 S.W.2d at 499.  Disputes regarding the interpretation,
meaning, and enforcement of a judgment rendered by a Texas trial court are
resolved by the presiding judge of the trial court that rendered the judgment. 
See In re Akin Gump Strauss Hauer & Feld, LLP, 252 S.W.3d 480, 490
(Tex. App.—Houston [14th Dist.] 2008, no pet.); see also Tex. R. Civ. P.
308 (“The court shall cause its judgments and decrees to be carried into
execution . . . .”).  On this record, we cannot say that the trial court abused
its discretion in enforcing the September 2005 final judgment by assigning a
dollar value to the amount of “remaining assets” awarded to Carolyn’s special
trust.  See Beaumont Bank, 806 S.W.2d at 226.  We overrule Woody’s issue
as it relates to this provision of the turnover order. 

We next address Woody’s argument that the turnover
order erroneously adjudicated the merits of his substantive claim for
reimbursement from the real property awarded to Carolyn’s special trust in the September
2005 final judgment.  The turnover order directed Woody to “release all liens
or encumbrances” securing such a claim, and to “clear all title issues” related
to the real property; it also prohibited Woody from “executing, filing,
placing, or recording any liens or encumbrances of any type against the
property awarded to [Carolyn’s special trust].”  

The Texas turnover statute is purely procedural in
nature.  Republic Ins. Co. v. Millard, 825 S.W.2d 780, 783 (Tex. App.—Houston
[14th Dist.] 1992, no writ) (citing Cravens, Dargan & Co v. Peyton L.
Travers Co., Inc., 770 S.W.2d 573, 576 (Tex. App.—Houston [1st Dist.] 1989,
writ denied)).  The purpose of the turnover proceeding is merely to ascertain
whether an asset is in the possession of the judgment debtor or subject to the
debtor’s control.  Id. (citing Beaumont Bank, 806 S.W.2d at
227).  The statute does not allow for a determination of the parties’
substantive rights.  Id.  

We agree with Woody that the trial court had no
discretion to “skip the trial on the merits . . . and declare [a party] the
winner” with respect to the validity of the liens and other encumbrances placed
on the real property awarded to Carolyn’s special trust in the September 2005
final judgment.  See United Bank Metro v. Plains Overseas Group, Inc.,
670 S.W.2d 281, 283–84 (Tex. App.—Houston [1st Dist.] 1983, no writ) (rejecting
appellant’s argument that trial court should have determined in turnover
proceeding whether corporate veil could be pierced to allow satisfaction of
judgment from assets of corporation not already determined to be judgment
creditor); see also Cravens, 770 S.W.2d at 576–77 (rejecting appellant’s
argument that the trial court should have decided whether judgment-debtor
insurer was entitled to refund of $25,000 deposit made pursuant to the
insurance code, and whether the trial court could order insurer to turn over
deposit to appellant to satisfy judgment; insurer’s entitlement to deposit
depended on adjudication of insurer’s statutory obligations and could not be
decided in turnover proceeding); Steenland, 648 S.W.2d at 389–91
(turnover proceeding held to be an inappropriate vehicle for post-judgment
determination of amount of excess homestead value available for collection when
that amount was not determined in trial of underlying case).  

For the trial court to declare the liens or
encumbrances invalid and order Woody to release the liens, clear all title
issues, and refrain from filing or recording new liens, the trial court had to
make a substantive determination that Woody’s underlying reimbursement claim
was without merit.  A valid reimbursement claim is secured by a statutory lien
under the Texas Property Code.  See Tex. Prop. Code Ann. § 114.063
(Vernon 2007).  The merits of such a substantive claim are not the proper
subject of a turnover proceeding.  See United Bank Metro, 670 S.W.2d at
283–84; Cravens, 770 S.W.2d at 576–77; Steenland, 648 S.W.2d at
389–91.  We sustain Woody’s issue as it relates to the provisions of the
turnover order that (1) order the release of “all liens or encumbrances of any
type recorded against property awarded to the Carolyn Ann Lesikar Moon Special
Trust in the Final Judgment signed September 15, 2005 . . . ;” (2) order Woody
to “sign or execute any other documents . . . to clear any title issues
relating to the property . . . ;” and (3) prohibit Woody from “executing,
filing, placing, or recording any liens or encumbrances of any type against the
property. . . .”[10] 


Having sustained Woody’s first issue only as it
relates to his claim for reimbursement from the real property awarded to
Carolyn’s special trust in the September 2005 final judgment, we analyze Woody’s
remaining issues as they relate to the provision ordering Woody to turn over
$125,000 as half the “remaining assets” from the additional trust funds.    

II.        Jury Trial on
the Merits

Woody argues in his second issue that the trial court
abused its discretion in issuing the turnover order without (1) giving proper
notice of a trial on the merits; or (2) following summary judgment procedures
under Texas Rule of Civil Procedure 166(a).[11] 
Woody argues in his third issue that the trial court erred in denying his
request for a jury trial. Woody argues in his fourth issue that the trial court
abused its discretion in denying his motion for continuance based on his
alleged entitlement to a properly noticed trial on the merits.  His arguments
depend on characterizing the trial court’s provision ordering Woody to turn
over $125,000 as an adjudication of his substantive claim for reimbursement:
“The Brazoria Trial Court, if it had any jurisdiction, was required to resolve
the claims by trial on the merits.”  

We already have determined that the provision
ordering Woody to turn over $125,000 was not invalid as an adjudication of a
substantive claim.  See Tex. R. Civ. P. 308, 621; Arndt v. Farris,
633 S.W.2d at 499; In re Akin Gump, 252 S.W.3d at 490.  Woody does not
cite any authority for the proposition that the trial court was required to
give notice before enforcing the September 2005 final judgment, or that the
procedural requirements of a trial on the merits or summary judgment apply in
such a case.  

None of the cases cited by Woody support his argument
that the trial court should have held and noticed a trial on the merits or
complied with summary judgment procedures before enforcing the September 2005
final judgment.  See In re Kings Ridge Homeowners Ass’n, Inc., 303
S.W.3d 773, 784–85 (Tex. App.—Fort Worth 2009, no pet.); Lane v. Baxter
Healthcare Corp., 905 S.W.2d 39, 40–41 (Tex. App.—Houston [1st Dist.] 1995,
no writ); Cont’l Oil Co. v. P.P.G. Indus., 504 S.W.2d 616, 622 (Tex.
Civ. App.—Houston [1st Dist.] 1974, writ ref’d n.r.e.), disapproved on other
grounds by In re Smith Barney, Inc., 975 S.W.2d 593, 596–98 (Tex. 1998); Hatten
v. City of Houston, 373 S.W.2d 525, 533–35 (Tex. Civ. App.—Houston 1963,
writ ref’d n.r.e.).[12]


We overrule Woody’s second, third, and fourth issues.            

III.      Relief

Having sustained Woody’s first issue as it relates to
the provisions ordering Woody to release the liens, clear all title issues, and
refrain from filing or recording new liens against the real property awarded to
Carolyn’s special trust, and overruled Woody’s remaining issues, we must
determine the appropriate disposition on appeal.  

Woody requests that we reverse the trial court’s
turnover order in its entirety and “dismiss all of [Carolyn’s] claims.” 
However, Woody’s arguments support only the conclusion that the turnover order
is erroneous as to the provisions ordering Woody to release the liens, clear
all title issues, and refrain from filing or recording new liens against the
real property awarded to Carolyn’s special trust.  We therefore must decide
whether to (1) reverse the turnover order as to the erroneous provisions and
remand the case to the trial court to consider the merits of Woody’s
reimbursement claim; or (2) modify the turnover order by removing the erroneous
provisions and affirm the turnover order as modified.  See Tex. R. App.
P. 43.2.  

Woody argues that the trial court cannot adjudicate
his reimbursement claim because “a new suit must be filed in order to address
new matters not covered in a prior judgment where, as here, plenary
jurisdiction has expired.”  The trial court signed the final judgment in this
case on September 13, 2005.  The parties do not dispute that the trial court’s
plenary power expired thereafter.  See Tex. R. Civ. P. 329b (plenary
power expires 30 days after the judgment is signed or after post-judgment
motions are denied).  In any event, the issuance of our judgment in the first
appeal means that the trial court lost plenary power to decide any issue except
for the amount of Carolyn’s reasonable and necessary attorney’s fees and carry
out the mandate of this court.  See Medina v. Benkiser, 317 S.W.3d 296,
299–300 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (trial court did not
award attorney’s fees in final judgment, and appellees did not raise failure to
do so in first appeal; trial court was foreclosed from awarding attorney’s fees
after appellate court issued opinion and judgment); Lake v. Lake, 899
S.W.2d 737, 741 (Tex. App.—Dallas, 1995, no writ) (trial court could not go
beyond appellate court’s mandate and consider appellant’s new claim for
attorney’s fees on remand); Martin v. Credit Prot. Ass’n Inc., 824
S.W.2d 254, 257 (Tex. App.—Dallas, 1992, writ dism’d w.o.j.) (“The district
court’s authority [on remand] is limited to trying only those issues specified
in the mandate.”); see also Lesikar, 237 S.W.3d at 375–79 (reversing
award of attorney’s fees to Carolyn and remanding issue of amount of reasonable
and necessary attorney’s fees to trial court; affirming September 2005 final
judgment in all other respects).  

Generally, judicial action taken after the trial
court’s plenary power has expired is void and a nullity.  See Moore Landrey,
L.L.P. v. Hirsch & Westheimer, P.C., 126 S.W.3d 536, 543 (Tex.
App.—Houston [1st Dist.] 2003, no pet.); see also Malone v. Hampton, 182
S.W.3d 465, 468 (Tex. App.—Dallas 2006, no pet.).  Even assuming that the
reimbursement claim could have been brought in this action, the trial court is
without plenary power to decide the merits of Woody’s reimbursement claim
because the expiration of the trial court’s plenary power “closed the door on
the possibility” of Woody bringing his reimbursement claim for adjudication in
this case.  See Medina, 317 S.W.3d at 299–300. 

Accordingly, we decline to remand the case to the
trial court and instead modify the trial court’s turnover order by removing only
those provisions (1) ordering the release of “all liens or encumbrances of any
type recorded against property awarded to the Carolyn Ann Lesikar Moon Special
Trust in the Final Judgment signed September 15, 2005 . . . ;” (2) ordering
Woody to “sign or execute any other documents . . . to clear any title issues
relating to the property . . . ;” and (3) prohibiting Woody from “executing,
filing, placing, or recording any liens or encumbrances of any type against the
property. . . .”  We affirm the trial court’s turnover order as modified.    

CONCLUSION

We modify the
trial court’s turnover order as described above, and affirm the turnover order
as modified.

 








                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Brown, Boyce, and Jamison.

 









[1]
We recite these and the following facts from this court’s opinion in the prior
appeal taken in this case.  See Lesikar v. Moon, 237 S.W.3d 361
(Tex. App.—Houston [14th Dist.] 2007, pet. denied).





[2]
Carolyn, who acted in her individual capacity and in her capacity as trustee of
her special trust, sued Woody in his individual capacity and in his capacities
as trustee of the Family Trust, trustee of his special trust, and executor of
his father’s estate.  Woody, in his individual capacity, is no longer party to
the litigation that led to the present appeal.  We refer to the parties to this
appeal generally as “Woody” and “Carolyn” throughout; except where noted, the
distinctions between the various capacities of Carolyn and Woody are not
material to our resolution of the issues on appeal.  





[3]
Woody sought to join the surety on his supersedeas bond in Brazoria County to
prevent that surety from releasing any funds to Carolyn.  The disposition of
the Harris County litigation is not germane to our resolution of the issues in
this appeal.   





[4]
Carolyn also filed a motion for contempt, which the trial court did not grant.





[5]
The trial court’s findings of fact and conclusions of law state that the filing
of the plea to the jurisdiction was “untimely, was denied, and was not
considered in determining the Application for Turnover Relief.”  Woody’s
counsel stated at the outset of the hearing: “I want to make it clear we’re
appearing this morning subject to the plea of jurisdiction. . . .  I oppose the
[addition] of any new pleadings or any old judgment not covered by it in these
new claims.  They should be filed in a new suit.”  In discussing Woody’s
reimbursement claim, the trial court stated: “Since the Court gave summary
judgment a long, long time ago, it’s been upheld and determined that [Carolyn]
should be entitled to her special trust.  We’re talking about probably 5 years
ago we decided that[,] and then I wouldn’t see where there would be any
authority on behalf of that trustee to litigate against her with her money.  I
just don’t think that’s a doable thing.”  Woody’s counsel responded: “Well,
regardless, we’re stating we’d like an order on the plea to the jurisdiction
which states that it’s overruled so we’ll be in a position to carry that
forward to the court of appeals.”  This exchange undermines the trial court’s
finding that the plea to the jurisdiction was untimely and that the merits of
the motion were not considered by the trial court.  Regardless, the lack of
subject matter jurisdiction is fundamental error that must be reviewed by this
court any time it appears.  See State v. John R. Phenix & Assocs., Inc.,
6 S.W.3d 288, 290 (Tex. App.—Houston [14th Dist.] 1998, no pet.).





[6]
The turnover order also states: “It is further ORDERED that[] [Woody is]
prevented from taking any actions to prevent or interfere with the satisfaction
of the amounts specified herein from the Supersedeas Bond . . . if [Woody does]
not comply with the terms of this Turnover Order.”  The only “amount[]
specified” in the turnover order is $125,000 that the trial court ordered Woody
to turn over to Carolyn; the turnover order specifically identifies this amount
as the portion of additional trust funds awarded to Carolyn’s special trust in
the September 2005 final judgment.  The provision therefore only limits Woody’s
interference with the satisfaction of the $125,000 award for additional trust
funds if he does not turn over that amount to Carolyn.  Woody’s issues on
appeal regarding this provision are based on his assertion that the provision
erroneously prohibits Woody from defending against Carolyn’s claim that she is
entitled to other amounts from the supersedeas bond.  Carolyn argued in her
motion for turnover relief that she is entitled to those amounts because (1)
Woody withheld rents and insurance proceeds collected on the real property
awarded to Carolyn under the final judgment throughout the pendency of the
first appeal; and (2) the unpaid rents and insurance proceeds are secured by
the supersedeas bond pursuant to Texas Rule of Appellate Procedure 24.1(d).  Woody
admits that Carolyn has pursued her claim for unpaid rents and insurance
proceeds in a separate action against the bonding company.  Because we uphold
the provision ordering Woody to turn over $125,000 in additional trust funds, see
infra Part I.B., we do not address Woody’s arguments based on his incorrect
assertion that the provision prevents Woody from defending against Carolyn’s
additional claim to the supersedeas bond.





[7]
Woody also argues that the Harris County trial court had dominant jurisdiction
to decide issues related to (1) the validity of the liens and encumbrances; and
(2) Carolyn’s claims against the supersedeas bond.  We affirm Woody’s issue as
it relates to the validity of the liens and encumbrances on other grounds.  See
infra Part I.B.  We have already overruled Woody’s issues as they relate to
Carolyn’s claims against the supersedeas bond.  See supra note 6.  We
therefore do not address Woody’s arguments regarding the alleged dominant
jurisdiction of the Harris County trial court over these issues.  





[8]
Woody argues in his reply brief that “Woody Lesikar as Trustee, has absolute
statutory standing to pursue this appeal, both for the purposes of enforcing
the requirements of the Trust Agreement to pay all legitimate debts and as
trustee of the Woody K. Lesikar Special Trust, and as beneficiary of the
Woodrow V. Lesikar Family Trust, which also has an interest in the enforcement of
the Family Trust provisions.”  A conclusion that Woody has standing as trustee
to pursue this appeal on behalf of the trusts does not address whether Woody
has standing as trustee to object to the trial court’s purported assertion of
personal jurisdiction over Woody in his individual capacity.





[9]
Woody also argues: “If the Court has no jurisdiction to review, interpret, or
enforce its prior judgment other than as rendered, it has no jurisdiction to
impose contempt sanctions on a party for supposedly violating a condition of a
bond order suspending enforcement of the judgment after the judgment’s
enforcement is no longer suspended.”  Rule 24.2(d) specifically authorizes the
trial court to “enjoin the judgment debtor from dissipating or transferring
assets to avoid satisfaction of the judgment” pending an appeal in civil
cases.  See Tex. R. App. P. 24.2(d).  The trial court has inherent
authority to enforce its orders and punish conduct in contempt of those
orders.  See Ex parte Browne, 543 S.W.2d 82, 86 (Tex. 1976); Galtex
Prop. Investors, Inc. v. City of Galveston, 113 S.W.3d 922, 927 (Tex.
App.—Houston [14th Dist.] 2003, no pet.).  Generally, a person who willfully
disobeys a valid court order is guilty of contempt and can be subjected to
imprisonment or fines.  Galtex Prop. Investors, 113 S.W.3d at 927; see
also In re Small, 286 S.W.3d 525, 530 (Tex. App.—Houston [14th Dist.] 2009,
no pet.).  Carolyn filed a motion for contempt on January 6, 2010.  The trial
court signed a “show cause” order regarding the alleged violations of the trial
court’s orders on January 8, 2010; the trial court did not impose any contempt
sanctions after the hearing on January 29, 2010.  Carolyn does not appeal the
trial court’s failure to impose contempt sanctions.





[10]
Our resolution of this sub-issue also disposes of Woody’s fifth issue on
appeal, which contains alternative arguments in support of invalidating these
provisions.  





[11]
Although Woody frames his issue as a complaint regarding the trial court’s
failure to give proper notice for a trial, he also asserts that “[t]he Brazoria
Court summarily granted Moon’s claims for Turn Over relief without a trial on
the merits . . . .”  Woody acknowledges in his brief that the trial court held
a “three hour trial” before signing the turnover order.  





[12]
Woody also argues as part of his second issue that (1) the turnover order
improperly adjudicated substantive rights of Woody in his individual capacity
because he is a third party in that capacity and not a judgment debtor; and (2)
Carolyn sought declaratory relief regarding her entitlement to rents and
insurance proceeds from the supersedeas bond, and the trial court impermissibly
decided that issue without joining the bonding company.  These arguments do not
advance Woody’s argument that the trial court failed to comply with proper
notice procedures for a trial on the merits or summary judgment procedures. 
Even if they did, they would not require reversal because we already have
determined that (1) Woody in his capacity as trustee and executor lacks
standing to complain on behalf of Woody in his individual capacity; and (2) the
turnover order provision prohibiting Woody from “prevent[ing] or interfere[ing]
with the satisfaction of the amounts specified” in the turnover order properly
concerns Woody’s payment of $125,000 in additional trust funds and does not
constitute an adjudication of Carolyn’s claim for rents and insurance proceeds
from the supersedeas bond.